**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| RONALD S. HERMANOWICZ, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>    v.<br><br>GENERAL MOTORS, LLC,<br><br>                  Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     Plaintiff Ronald S. Hermanowicz ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant General Motors LLC ("GM" or "Defendant") and alleges as follows:

## PARTIES

2.     Plaintiff Ronald S. Hermanowicz is an individual consumer who, at all times material hereto, was a citizen of Illinois.

3.     Defendant General Motors LLC is incorporated in Delaware with its principal executive offices located at 300 Renaissance Center, Detroit, Michigan 48243.

## JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over the Defendant. The Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §

1332(d). The amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and this case is a class action in which some members of the Class are citizens of different states from Defendant. *See* 28 U.S.C. § 1332(d)(2)(A). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), (c), and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district. Defendant is headquartered and has transacted business and affairs in this district and has committed the acts complained of in this district.

## FACTUAL ALLEGATIONS

**A.      GM Manufactured and Sold Vehicles Equipped with Defective L87 Engines**

6.      GM was founded in 1908 and has become one of the largest automobile manufacturers in the United States, selling vehicles under several brands, including Chevrolet, GMC, Cadillac, and Buick. As of 2024, GM held approximately 16.5% of the auto market in the United States.[1] GM has a network of over 4,000 authorized dealerships in all 50 states.[2]

---

[1]      https://news.gm.com/home.detail.html/Pages/news/us/en/2025/jan/0103-gmsales.html (last accessed September 29, 2025).

[2] https://www.gm.com/company/us-operations (last accessed September 29, 2025).

7.      In 2018, GM introduced a 6.2L V8 gas engine (RPO L87) ("L87 Engine") as part of the second generation of the EcoTec3 engine family, succeeding the 6.2-liter V8 L86 engine.[3] The L87 Engine, a 6.2-liter, eight-cylinder engine, was used in various GM trucks, vans, and SUVs, including the 2021-2024 Cadillac Escalade; 2021-2024 Cadillac Escalade ESV; 2019-2024 Chevrolet Silverado 1500; 2021-2024 Chevrolet Suburban; 2021-2024 Chevrolet Tahoe; 2019-2024 GMC Sierra 1500; 2021-2024 GMC Yukon; 2021-2024 GMC Yukon XL ("Class Vehicles").

8.      The L87 Engine was designed to optimize fuel efficiency and featured industry-first cylinder deactivation technology.[4]

9.      Despite GM's claims of the engine's advanced technology and efficiency, the L87 Engine was found to contain a dangerous and potentially fatal manufacturing defect. The L87 Engine contains a defect in which rod-bearing damage from sediment on connecting rods and crankshaft-oil galleries combined with out-of-specification crankshaft dimensions and surface finish could lead to

---

[3] https://www.theautopian.com/gms-6-2-liter-v8-is-seizing-up-at-highway-speeds-and-leaving-owners-stranded/ (last accessed September 29, 2025).

[4] https://gmauthority.com/blog/gm/gm-engines/l87/ (last accessed September 29, 2025); https://www.motorreviewer.com/engine.php?engine_id=201 (last accessed September 29, 2025).

engine damage, engine failure, loss of propulsion, and vehicle crashes or collisions (the "Defect").[5]

10.    GM sold an estimated 597,630 vehicles with this Defect.[6]

11.    The Defect poses a significant safety risk because if the engine fails during vehicle operation, the vehicle will lose propulsion, increasing the risk of a crash.

**B.    GM's Representations and Warranties**

12.    GM markets Class Vehicles as safe and reliable. GM developed and disseminated owner's manuals, warranty booklets, advertisements, and other intentionally unreasonable and deceptive promotional materials relating to the Class Vehicles. For example, GM's online marketing and advertising contains statements such as "GM looks at safety differently. We know road safety is more than just vehicle features, which is why we take a holistic approach, combining research, technology and advocacy to help keep you and your family safe on the road" and "GM is committed to helping create a future with zero crashes."[7]

---

[5]    https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25V274-1598.PDF   (last   accessed September 29, 2025).

[6]    https://static.nhtsa.gov/odi/rcl/2025/RCAK-25V274-2120.pdf   (last   accessed September 29, 2025).

[7]    https://www.gm.com/innovation/vehicle-safety/safety-through-a-human-lens (last accessed   September   29,   2025);   https://www.gm.com/innovation/vehicle-safety/driver-distraction (last accessed September 29, 2025).

13.    GM also provided purchasers of Class Vehicles, including Plaintiff and Class Members, a limited warranty that "[c]overs the entire vehicle for repairs, including parts and labor, to correct any defect in materials or workmanship . . ." ("Limited Warranty").[8]

14.    Plaintiff and Class Members are intended third party beneficiaries of the Limited Warranty and implied warranties made by GM with regard to the Class Vehicles sold to Plaintiff and Class Members. GM's warranties expressly provide that, upon sale of the vehicle to a new owner, "warranties that are still active will transfer to the new owner."[9]

15.    In addition, GM's Limited Warranty states, "[a]ny defects still present at the time the vehicle is delivered to you are covered by the warranty."[10]

## C.    GM Knew About the L87 Engine Defect and Failed to Disclose It

---

[8] https://www.gmc.com/owners/warranty-protection-plans (last accessed September 29, 2025); https://www.cadillac.com/ownership/warranty-repairs (last accessed September 29, 2025); https://www.chevrolet.com/owners/warranty (last accessed September 29, 2025).

[9] *E.g.*, *Id.*

[10] https://contentdelivery.ext.gm.com/content/dam/cope/en_us/public/pdf_assets/active/warranty_manuals_browse/21_GMC_WM_en_US_U_84267000C_2021FEB01_3P.pdf (last accessed September 29, 2025); https://contentdelivery.ext.gm.com/content/dam/cope/en_us/public/pdf_assets/active/warranty_manuals_browse/22_CHEV_WM_en_US_U_84570568D_2025JAN06_4P.pdf (last accessed September 29, 2025).

16.     GM had been aware of the L87 Engine defects since at least 2021 if not earlier.

17.     GM's pre-production testing, including Failure Modes and Effects Analysis, and Design Validation Plan and Report, should have revealed the Defect.[11] GM also performs quality control testing on its engine parts, including the connecting rods, crankshaft, and bearings affected by the Defect, prior to sale.

18.     As early as April 2021, GM received field complaints in the United States potentially related to failure of the L87 Engine due to crankshaft, connecting rod, or engine bearing failure.[12] By February 3, 2025, GM's investigation identified such 28,102 field complaints or incidents, of which 14,332 involved allegations of loss of propulsion, including 12 potentially related alleged crashes and 12 potentially related alleged injuries.[13]

---

[11]     https://parts.chevrolet.com/product/gm-genuine-parts-engine-connecting-rod-bearing-set-19317286 (last accessed September 29, 2025); https://www.caranddriver.com/news/a15368085/maliboom-faulty-connecting-rod-bearing-causing-engine-failures-in-gm-four-cylinders/ (last accessed September 29, 2025).

[12]     https://static.nhtsa.gov/odi/inv/2025/INOA-PE25001-10002.pdf (last accessed September 29, 2025).

[13]     https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25V274-1598.PDF (last accessed September 29, 2025).

19.    As a result of these field complaints, GM conducted three internal investigations into the Defect, which were closed in February 2022, June 2023, and July 2024.[14]

20.    GM was also aware of the Defect via hundreds of complaints made to National Highway Traffic Safety Administration ("NHTSA") and other third-party forums. For example:

a.    On December 16, 2021, a consumer from North Carolina reported that their 2021 Chevrolet Silverado 1500 experienced engine failure due to two rods going through the engine block, necessitating engine replacement.[15]

---

[14] *Id*.

[15] https://www.nhtsa.gov/?nhtsaId=11444064 (last accessed September 29, 2025).

**DECEMBER 16, 2021** NHTSA CAMPAIGN NUMBER: 11444064 ∧

## Components: ENGINE

**NHTSA ID Number:** 11444064

**Incident Date:** December 5, 2021

**Consumer Location:** KITTY HAWK, NC

**Vehicle Identification Number:** 1GCUYEED2MZ******

**Summary of Complaint**

| | | |
|---|---|---|
| **Crash:** | **No** | The contact owns a 2021 Chevrolet Silverado 1500. The contact stated while driving 55 MPH, she heard abnormal knocking sounds coming from the engine. The contact veered to the side of the road inspected the vehicle but found no issues. The contact continued driving for a while before the failure recurred and the sound was much louder. The check engine warning light illuminated. The vehicle was towed to a local dealer to be diagnosed. The contact was informed that two rods had gone through the engine block and the engine needed to be replaced. The vehicle was not repaired. The manufacturer was made aware of the failure. The failure mileage was approximately 6,000. |
| **Fire:** | **No** | |
| **Injuries:** | **0** | |
| **Deaths:** | **0** | |

b.      On August 1, 2022, a consumer from Texas reported that their 2021 GMC Yukon suffered catastrophic engine failure due to spun bearings, with internal engine bearing material found in the oil.[16]

---

[16] https://www.nhtsa.gov/?nhtsaId=11477035 (last accessed September 29, 2025).

**AUGUST 1, 2022** NHTSA CAMPAIGN NUMBER: 11477035 

**Components: POWER TRAIN, ENGINE**

**NHTSA ID Number:** 11477035

**Incident Date:** June 10, 2022

**Consumer Location:** CORPUS CHRISTI, TX

**Vehicle Identification Number:** 1GKS2JKL5MR******

**Summary of Complaint**

| | | |
|---|---|---|
| Crash: | No | While traveling at highway speeds, the vehicle suddenly and without warning lost power. All gauges remained in the normal range. After pulling on to the shoulder of a highway and turning the vehicle off, the vehicle would not start. After being towed the dealership, the vehicle would not power up. Dealership checked DTCS and found code P0016 Crankshaft Position Sensor and Intake/Single Camshaft Position Sensor Correlation. Dealership inspected wiring for chaffing and tested camshaft position sensor circuitry and all found in normal condition. Dealership followed document ID: 5646662 diagnostic procedure inspecting camshaft position sensor and camshaft actuator solenoid valve for incorrect installation or damage. While inspecting, dealership found internal engine bearing material in oil indicating internal mechanical failure. Dealership removed engine oil pan and #1 and #2 connecting rods and found bearings spun causing catastrophic engine failure. Crankshaft main bearing cap #3 also found discolored from extreme heat. Dealership then followed bulletin #22-NA-074 for replacement of engine oil, cooler lines and engine oil cooler after connecting rod and main bearing damage The vehicle only had 17,067 miles. |
| Fire: | No | |
| Injuries: | 0 | |
| Deaths: | 0 | |

      c.     On November 29, 2022, a consumer from Tennessee reported that their 2022 GMC Sierra 1500 experienced a spun bearing, leading to engine replacement.[17]

---

[17] https://www.nhtsa.gov/?nhtsaId=11637928 (last accessed September 29, 2025).

**JANUARY 23, 2025** NHTSA CAMPAIGN NUMBER: 11637928

**Components: ENGINE**

**NHTSA ID Number:** 11637928

**Incident Date:** November 29, 2022

**Consumer Location:** KNOXVILLE, TN

**Vehicle Identification Number:** 3GTPUEEL6NG******

**Summary of Complaint**

| Crash: | No |
|---|---|
| Fire: | No |
| Injuries: | 0 |
| Deaths: | 0 |

bought vehicle in may 2022. had engine suddenly 'lock up' while driving on the highway to work in november 2022. towed and repaired at gym dealer through december 2022 for 'spun bearing'. had 'fuel sensor' replaced in 10/23 when it failed the day before our planned fall break, towing our camper… then mid-december 2023 had camshaft part replacement when it 'locked up' again. got it back for 9 days when it once again 'locked up' (not driving this time…) and had engine completely replaced. on the first two occasions i was traveling at highway speed when all of a sudden- i lost power to the engine. thankfully i was on the shoulder side not towing anything either time!

   d.   On August 5, 2023, a consumer from Oklahoma reported that their 2023 GMC Yukon's engine failed twice due to bearings not getting oil.[18]

---

[18] https://www.nhtsa.gov/?nhtsaId=11636779 (last accessed September 29, 2025).

**JANUARY 18, 2025** NHTSA CAMPAIGN NUMBER: 11636779

**Components: ENGINE**

**NHTSA ID Number:** 11636779

**Incident Date:** August 5, 2023

**Consumer Location:** BURNS FLAT, OK

**Vehicle Identification Number:** 1GKS2DKL4PR******

**Summary of Complaint**

| | | |
|---|---|---|
| **Crash:** | **No** | I've had the engine blown and replaced twice. The first time it failed in the middle of an intersection. We could not put it in neutral to move it. We had to call a tow truck. No check engine lights just a noise. The engine had failed bc the bearings couldn't get oil. The second time it blew I was driving down the interstate and same thing only a noise so I pulled over and the car died. Also had to call a tow truck. It was the same as the first time the engine had blew because of the bearings not getting any oil. So now I'm on my third engine in a 2023, hoping that it doesn't do it again. |
| **Fire:** | **No** | |
| **Injuries:** | **0** | |
| **Deaths:** | **0** | |

e. On December 27, 2023, a consumer from New Hampshire reported that their 2023 Chevrolet Tahoe's engine spun a bearing at 10,000 miles, causing the car to die.[19]

---

[19] https://www.nhtsa.gov/?nhtsaId=11562182 (last accessed September 29, 2025).

**DECEMBER 27, 2023** NHTSA CAMPAIGN NUMBER: 11562182

**Components: ENGINE**



**NHTSA ID Number:** 11562182

**Incident Date:** December 27, 2023

**Consumer Location:** PELHAM, NH

**Vehicle Identification Number:** 1GNSKRKL8PR******

**Summary of Complaint**

**Crash:** No       Car completely died. Engine spun a bearing at 10,000 miles.

**Fire:** No

**Injuries:** 0

**Deaths:** 0

f.      On March 2, 2024, a consumer from Nevada experienced a catastrophic main crankshaft bearing failure in their 2022 Chevrolet Silverado, resulting in a loss of power on a highway.[20]

---

[20] https://www.nhtsa.gov/?nhtsaId=11636827 (last accessed September 29, 2025).

**JANUARY 18, 2025** NHTSA CAMPAIGN NUMBER: 11636827

**Components: ENGINE**

**NHTSA ID Number:** 11636827

**Incident Date:** March 2, 2024

**Consumer Location:** NORTH LAS VEGAS, NV

**Vehicle Identification Number:** 3GCUDHEL7NG******

**Summary of Complaint**

| | | |
|---|---|---|
| Crash: | No | In March of 2024 my 2022 Silverado with the 6.2L V8 suffered a catastrophic main crankshaft bearing failure resulting in the vehicle losing power on a local highway. I was able to coast the vehicle to the side of the road where it would not restart. GM replaced the engine under warranty. 8 months later (november of 2024) the same vehicle suffered a subsequent engine failure with similar symptoms but I haven't yet recieved the exact cause. |
| Fire: | No | |
| Injuries: | 0 | |
| Deaths: | 0 | |

g.      On April 10, 2024, a consumer from Indiana reported that their 2024 Chevrolet Silverado 1500 spun a bearing after only 1,147 miles of use.[21]

**JANUARY 18, 2025** NHTSA CAMPAIGN NUMBER: 11636703

**Components: ENGINE**

**NHTSA ID Number:** 11636703

**Incident Date:** April 10, 2024

**Consumer Location:** HUNTINGTON, IN

**Vehicle Identification Number:** 1GCUDGEL9RZ******

**Summary of Complaint**

| | | |
|---|---|---|
| Crash: | No | Vehicle spun a bearing in the lower part of the engine after 1147 miles of use. |
| Fire: | No | |
| Injuries: | 0 | |
| Deaths: | 0 | |

---

[21] https://www.nhtsa.gov/?nhtsaId=11636703 (last accessed September 29, 2025).

      h.     On April 25, 2024, a consumer from South Carolina reported that their 2022 GMC Sierra 1500 experienced rod bearing failure, which was diagnosed by a dealer.[22]

**APRIL 25, 2024** NHTSA CAMPAIGN NUMBER: 11585235

**Components: ENGINE**

**NHTSA ID Number:** 11585235

**Incident Date:** April 25, 2024

**Consumer Location:** CONWAY, SC

**Vehicle Identification Number:** 3GTUUFEL5NG******

**Summary of Complaint**

| | | |
|---|---|---|
| Crash: | No | The contact owns a 2022 GMC Sierra 1500. The contact stated that while driving at an undisclosed speed, he heard a knock sound coming from the engine compartment. No warning lights were illuminated. The vehicle was taken to the dealer, and during an inspection, the engine seized, after which the dealer diagnosed a failure with the rod bearings. The vehicle was repaired. The manufacturer was notified of the failure but provided no assistance. The failure mileage was 31,000. |
| Fire: | No | |
| Injuries: | 0 | |
| Deaths: | 0 | |

      i.     On June 8, 2024, a consumer from Michigan reported that their 2022 GMC Sierra 1500 had a crank bearing spin, a known problem by dealerships and GM.[23]

---

[22] https://www.nhtsa.gov/?nhtsaId=11585235 (last accessed September 29, 2025).

[23] https://www.nhtsa.gov/?nhtsaId=11597240 (last accessed September 29, 2025).

JUNE 27, 2024 NHTSA CAMPAIGN NUMBER: 11597240 

**Components: ENGINE**

**NHTSA ID Number:** 11597240

**Incident Date:** June 8, 2024

**Consumer Location:** AFTON, MI

**Vehicle Identification Number:** 3GTUUDEL0NG******

**Summary of Complaint**

| Crash: | No |
|---|---|
| Fire: | No |
| Injuries: | 0 |
| Deaths: | 0 |

Just got off the highway was at stop sign on exit ramp and it just died. No warnings no lights no indication that something was about to happen. No neutral so couldn't even push it out of the way of traffic. Had it towed to shop for diagnostic. Possible lifter problem. $600. Dealership towed it to their shop. Engine tear down, lifters replaced. Gmc to pay 30%, dealership paying $1000, me $1300. Dealership started truck and the crank bearing spun. Now needs new engine, which are on back order. Cost ??? How long before engine available??? This is a known problem by the dealerships, GM & repair shops. Had we still been on the highway when this occurred doing 75mph we could have been killed.

j.      On September 3, 2024, a consumer from New Jersey reported that their 2021 GMC Sierra 1500 had a suspected crankshaft bearing seizure,

causing engine issues.[24]

SEPTEMBER 11, 2024 NHTSA CAMPAIGN NUMBER: 11614009                    ⌃

**Components: ENGINE**

**NHTSA ID Number:** 11614009

**Incident Date:** September 3, 2024

**Consumer Location:** CARNEYS POINT, NJ

**Vehicle Identification Number:** 3GTU9DEL4MG******

**Summary of Complaint**

| | | |
|---|---|---|
| Crash: | No | The contact's husband owns a 2021 GMC Sierra 1500. The contact stated that while her husband was driving 80 MPH, the vehicle stalled. Additionally, the "Shift to Neutral and Restart" message blinked. The vehicle was steered to the side of the road where the vehicle failed to restart. The vehicle was towed to an independent mechanic where the failure was not able to be replicated. The vehicle was then towed to the dealer where it was suspected that the crankshaft bearing had seized, putting pressure on the starter, causing a short. The contact was informed that the engine needed to be taken apart for a proper diagnostic test. The vehicle was not repaired. The manufacturer was notified of the failure. The failure mileage was approximately 81,000. |
| Fire: | No | |
| Injuries: | 0 | |
| Deaths: | 0 | |

k.      On October 1, 2024, a consumer from Alabama reported that the

main bearing on their 2020 Chevrolet Silverado 1500's crankshaft failed.[25]

---

[24] https://www.nhtsa.gov/?nhtsaId=11614009 (last accessed September 29, 2025).

[25] https://www.nhtsa.gov/?nhtsaId=11630527 (last accessed September 29, 2025).

**DECEMBER 13, 2024** NHTSA CAMPAIGN NUMBER: 11630527

**Components: ENGINE**

**NHTSA ID Number:** 11630527
**Incident Date:** October 1, 2024
**Consumer Location:** FRISCO CITY, AL
**Vehicle Identification Number:** 3GCPYFEL9LG******
**Summary of Complaint**
**Crash:**    **No**         Main bearing on crankshaft when out
**Fire:**     **No**
**Injuries:**  **0**
**Deaths:**   **0**

l.     On November 10, 2024, a consumer from Indiana experienced an engine failure in their 2022 GMC Yukon while on the highway, which was diagnosed as a main crank thrust bearing failure.[26]

---

[26] https://www.nhtsa.gov/?nhtsaId=11636613 (last accessed September 29, 2025).

**JANUARY 17, 2025** NHTSA CAMPAIGN NUMBER: 11636613

**Components: ENGINE**

**NHTSA ID Number:** 11636613

**Incident Date:** November 10, 2024

**Consumer Location:** CROWN POINT, IN

**Vehicle Identification Number:** 1GKS2JKL7NR******

**Summary of Complaint**

| | |
|---|---|
| **Crash:** No | Engine failed on highway in a different state, was able to drive home but barely made it. 2 newborns, 2 toddlers, and 2 adults were all in the vehicle at the time the engine started squealing. No warning signs. Dealer dropped oil filter and it was full of metal. Official diagnosis was main crank thrust bearing failure. Rebuilt engine was installed under powertrain warranty (37500 miles). GM did not put us in a comparable rental vehicle, so I had to pay out of pocket expenses outside of their rental allowance for a compact car. Dealer charged for an oil change. Dealer changed the rebuilt engine warranty terms upon pickup from 3yr/100,000miles to 12mo/12,000 miles or the current terms of power train warranty, whichever was longer. GM is well aware of this issue and is keeping it quiet. Rebuilt engines are on back order for months because it's that common of a failure. |
| **Fire:** No | |
| **Injuries:** 0 | |
| **Deaths:** 0 | |

m.      On November 19,  2024, a consumer from Michigan reported that their 2021 GMC Yukon had spun rod bearings on cylinders 1 and 2, damaging the crankshaft.[27]

---

[27] https://www.nhtsa.gov/?nhtsaId=11626737 (last accessed September 29, 2025).

**NOVEMBER 21, 2024** NHTSA CAMPAIGN NUMBER: 11626737
**Components: ENGINE**

**NHTSA ID Number:** 11626737
**Incident Date:** November 19, 2024
**Consumer Location:** HOWELL, MI
**Vehicle Identification Number:** 1GKS2DKL3MR******
**Summary of Complaint**

| Crash: | No | I was driving 55 mph and the engine failed without any prior |
|---|---|---|
| Fire: | No | warning. I was partially blocking traffic while waiting for a tow truck. The car was taken to a repair facility and diagnosed. |
| Injuries: | 0 | Spun rod bearings on cylinders 1 and 2 damaged the |
| Deaths: | 0 | crankshaft. I purchased this car $49,000 45 days ago and have made one payment on a car that is not drivable and parts are not readily available. There is a GM service bulletin because this is a known issue but not a recall. The power train warranty is up by mileage not time. I contacted the dealership and GMC and they will not assist with repairs. |

n.      On January 13, 2025, a consumer from Texas reported that a rod in their 2022 Chevrolet Silverado 1500 went through the engine block.[28]

---

[28] https://www.nhtsa.gov/?nhtsaId=11635919 (last accessed September 29, 2025).

**JANUARY 14, 2025** NHTSA CAMPAIGN NUMBER: 11635919

**Components: ENGINE**                                                    ⌃

**NHTSA ID Number:** 11635919

**Incident Date:** January 13, 2025

**Consumer Location:** SPRINGTOWN, TX

**Vehicle Identification Number:** 3GCPWBEK5NG******

**Summary of Complaint**

| | | |
|---|---|---|
| **Crash:** | **No** | GM has issue with Part restriction on the bottom end of the motor and rocker bearings going bad. No recalls on this just TSB. With that being said the motor blew a rod through the block because of the part restriction on the bottom end of the motor. GM wont fix it because it just a TSB. GM states that this is an issue the customer needs to fix and to look out for these issues. Even though the bottom end of the restriction is a catastrophic failure when there motor fails. I was 20 MPH when the rod in the motor went through the block. Now I got a 50000 dollar paper weight I cant drive because GM refuses to fix there issue. |
| **Fire:** | **No** | |
| **Injuries:** | **0** | |
| **Deaths:** | **0** | |

   o. On January 14, 2025, a consumer from Michigan reported that their 2023 Chevrolet Silverado had a thrust bearing failure, potentially damaging the crankshaft.[29]

---

[29] https://www.nhtsa.gov/?nhtsaId=11636439 (last accessed September 29, 2025).

**JANUARY 17, 2025** NHTSA CAMPAIGN NUMBER: 11636439

**Components: ENGINE**

**NHTSA ID Number:** 11636439

**Incident Date:** January 14, 2025

**Consumer Location:** MONROE, MI

**Vehicle Identification Number:** 3GCUDHEL7PG******

**Summary of Complaint**

| | | |
|---|---|---|
| **Crash:** | No | There were no symptoms prior to the engine failure. On January 14th, 2025 while driving 58 miles per hour heard a sound that sounded like a slap on the back window. After the slap sound I noticed the engine was not running as normal. There was also a sound coming from the engine like metal rattling around. A few minutes later the check engine light appeared in the instrument panel. Had the vehicle towed to the nearest GM dealership and was informed that the thrust bearing went out which may have caused damage to the crankshaft. |
| **Fire:** | No | |
| **Injuries:** | 0 | |
| **Deaths:** | 0 | |

21.    In addition to consumer complaints, GM released several bulletins related to the Defect. In December 2022, GM issued Technical Service Bulletin 19-NA-218, addressing ticking noises in engines equipped with the L87 Engine, indicating awareness of valvetrain problems.[30]

22.    In March 2023, GM published an article on its TechLink website addressing crankshaft bearing conditions in vehicles equipped with L87 Engines, indicating GM's awareness of the defect.[31]

---

[30] https://dot.report/bulletins/10212558 (last accessed September 29, 2025).

[31] https://gm-techlink.com/?p=17349 (last accessed September 29, 2025).

23.    By June 2023, GM released Bulletin No. PIP5984, placing the L87 Engine assembly on restriction due to internal engine concerns, highlighting ongoing awareness of the defect.[32]

24.    Despite this knowledge, GM continued to market the Class Vehicles as safe and reliable and did not disclose the Defect to consumers.

**D.    NHTSA Opens a Preliminary Evaluation of the Defect in January 2025**

25.    On January 16, 2025, the United States Department of Transportation's National Highway Traffic Safety Administration ("NHTSA") Office of Defects Investigation opened a "Preliminary Evaluation" regarding Class Vehicles experiencing "Engine failure resulting from connecting rod bearing failure" after receiving complaints and a number of "Early Warning Reporting (EWR) Field Reports" alleging engine failure in vehicles manufactured by General Motors (GM) equipped with the L87 V8 engine.[33]

26.    The investigation identified 877,710 vehicles with the same engine and problem.[34] The investigation found 28,102 field complaints, with 14,332 involving loss of propulsion, highlighting a major quality control issue.[35]

---

[32] tsbsearch.com/Chevrolet/PIP5984 (last accessed September 29, 2025).

[33]    https://static.nhtsa.gov/odi/inv/2025/INOA-PE25001-10002.pdf (last accessed September 29, 2025).

[34] *Id.*

[35]    https://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25V274-1598.PDF (last accessed September 29, 2025).

27.     The complainants report a bearing failure that may result in either engine seizure or breaching of the engine block by the connecting rod.[36] The complainants report that there is no detectability prior to the failure.[37]

28.     The investigation noted that "Failure or malfunction of the engine results in loss of motive power of the vehicle, which may lead to an increased risk of a crash resulting in injury and/or property damage."[38]

**E.     GM's Various Recalls Were Poorly Implemented and Confusing, and Failed to Make Plaintiff and Class Members Whole**

29.     On April 17, 2025, GM's Safety Field Action Decision Authority decided to conduct a safety recall for certain 2021-2024 models, including Cadillac Escalade, Chevrolet Silverado, GMC Sierra, and GMC Yukon that acknowledged defects in the crankshaft dimensions and rod bearing damage.[39] Dealers were supposed to be notified on April 24, 2025, and notification of the vehicle owners

---

[36] *Id.*

[37] https://static.nhtsa.gov/odi/inv/2025/INOA-PE25001-10002.pdf (last accessed September 29, 2025).

[38] *Id.*

[39] http://static.nhtsa.gov/odi/rcl/2025/RCLRPT-25V274-1598.PDF (last accessed September 29, 2025); https://gmauthority.com/blog/2025/04/chevy-silverado-gmc-sierra-recalled-for-6-2l-v8-engine-loss-of-propulsion/ (last accessed September 29, 2025).

was planned to begin on June 9, 2025.[40] The recall included a stop-sale order for most Class Vehicles whose crankshaft and cam shaft were out of sync and instructed dealers to replace the factory oil with higher viscosity oil in all other recalled vehicles.[41] The use of thicker oil, however, increases drag on internal engine components, negatively affecting performance and fuel consumption, and decreasing the vehicle's resale value.[42]

30.     The oil replacement remedy is inadequate, because it does not address the underlying engine defects. Simply confirming the crankshaft and cam shaft were in alignment and adding higher viscosity oil does not fix Class Vehicles' crankshaft dimensions and surface finish, which remain out of specification. The Defect could still manifest and cause the Vehicles to have an engine seizure at any moment without warning.

---

[40] *Id.*; https://static.nhtsa.gov/odi/rcl/2025/RCMN-25V274-3446.pdf (last accessed September 29, 2025).

[41] https://static.nhtsa.gov/odi/rcl/2025/RCRIT-25V274-8641.pdf (last accessed September 29, 2025); https://static.nhtsa.gov/odi/rcl/2025/RMISC-25V274-4725.pdf (last accessed September 29, 2025); https://www.carparts.com/blog/p0016-code-camshaft-position-a-camshaft-position-correlation-bank-1/?srsltid=AfmBOooLpkbJIeeYPZToE8xMIqeeyx6pN4HfnRXxX-WdmtQhM-LmM52W (last accessed September 29, 2025).

[42] *E.g.*, https://www.lube-media.com/wp-content/uploads/Lube-Tech-133-Fuel-economy-for-engine-oils-the-formulators-dilemma.pdf (last accessed September 29, 2025); https://static.nhtsa.gov/odi/tsbs/2016/MC-10118911-9999.pdf (last accessed September 29, 2025).

31.     In May 2025, GM updated the Recall to cover engine replacement for certain vehicles based on their VIN numbers.[43] The list of vehicles qualifying for engine replacement under the May 2025 recall does not include all Class Vehicles with the L87 Engine Defect.[44] In addition, consumers whose vehicles did qualify for engine replacement were left without adequate remedies as they waited months for backordered replacement engines.[45]

## PLAINTIFF'S ALLEGATIONS

32.     Plaintiff Ronald S. Hermanowicz is a resident and citizen of the State of Illinois and purchased a new 2024 GMC Sierra 1500 in Joliet, Illinois on June 4, 2024. Prior to his purchase of the Class Vehicle, Plaintiff did not know, nor could have known through reasonable diligence, of the Defect in his Vehicle.

33.     On or about March 22, 2025, Plaintiff heard a loud ticking noise emanating from his Sierra's L87 Engine, and the vehicle stopped running. Plaintiff had his Sierra towed back to the GMC dealership, where the service technicians identified the problem as spun rod bearings. The service technicians noted that "Rod bearings had spun damaging the rods and crankshaft and putting metal throughout

---

[43]   https://static.nhtsa.gov/odi/rcl/2025/RCRIT-25V274-5347.pdf   (last   accessed September 29, 2025).

[44]   *Id.*

[45]   *E.g.*, *supra* ¶ 20(i), (l),   https://www.nhtsa.gov/?nhtsaId=11597240 (last accessed September 29, 2025);   https://www.nhtsa.gov/?nhtsaId=11636613   (last accessed September 29, 2025).

the engine" requiring the engine, radiator, and oil cooler lines to be replaced. Plaintiff had to wait three weeks until April 12, 2025, before the repairs could be completed.

## CLASS ALLEGATIONS

34.    Pursuant to Rule 23(a), (b)(2), and (b)(3), Plaintiff brings this action on behalf of himself and others similarly situated.

35.    Plaintiff seeks to represent a Nationwide Class, defined as: All residents of the United States who purchased or leased a Class Vehicle, for purposes other than resale within the applicable statute of limitations (the "Class").

36.    In the alternative, Plaintiff seeks to represent a Subclass, defined as: All residents of Illinois who purchased or leased a Class Vehicle in Illinois, for purposes other than resale, within the applicable statute of limitations (the "Subclass").

37.    A "Class Vehicle" is defined as a vehicle manufactured and sold by GM with a L87 V8 engine, including the following vehicle models and years: 2021-2024 Cadillac Escalade; 2021-2024 Cadillac Escalade ESV; 2019-2024 Chevrolet Silverado 1500; 2021-2024 Chevrolet Suburban; 2021-2024 Chevrolet Tahoe; 2019-2024 GMC Sierra 1500; 2021-2024 GMC Yukon; 2021-2024 GMC Yukon XL.

38.    Excluded from the Class and Subclass are (i) Defendant, any entity in which a Defendant has a controlling interest or which has a controlling interest in any Defendant, and Defendant's legal representatives, predecessors, successors and

assigns; (ii) Defendant's employees, officers, directors, agents, and representatives and their family members; (iii) governmental entities; (iv) counsel for Plaintiff herein and any member counsel's immediate families; and (v) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

39.    Members of the Class and Subclass are so numerous that joinder is impracticable. GM sold hundreds of thousands of Class Vehicles in the United States, and GM has records of these sales and the owners.

40.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class and Subclass Members include:

a.    Whether GM's advertising and other public statements about the Class Vehicles were false and misleading;

b.    Whether GM misrepresented and/or failed to adequately disclose that Class Vehicles suffered from the L87 Engine Defect;

c.    Whether the cost of the Class Vehicles was falsely inflated by GM's promises the Class Vehicles were safe and reliable when in fact they were not;

d.    Whether GM's conduct was unfair, deceptive, and/or misleading under applicable law;

e.      Whether GM has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for it to retain the benefits conferred upon GM by Plaintiff and the Class and Subclass;

f.      Whether GM breached its express and/or implied warranties to Plaintiff and the Class and Subclass;

g.      Whether Plaintiff and the Class and Subclass have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages;

h.      Whether GM made negligent representations with regards to the Class Vehicles; and

i.      Whether GM has violated the state consumer protection laws alleged in this complaint.

41.    Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased and used, in a typical consumer setting, Defendant's Class Vehicles, and Plaintiff sustained damages from Defendant's wrongful conduct.

42.    Plaintiff will fairly and adequately protect the interests of the Class and Subclass and have retained counsel that is experienced in litigating complex

consumer protection class actions. Plaintiff has no interests which conflict with those of the Class or the Subclass.

43.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

44.     The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, thereby making appropriate equitable relief with respect to the Class and Subclass as a whole.

45.     The prosecution of separate actions by members of the Class and Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.

## COUNT I

### Michigan Consumer Protection Act

### Mich. Comp. Laws §§ 445.901, et seq.

### (on behalf of the Class)

46.     Plaintiff incorporates by reference and re-alleges all prior paragraphs of this complaint as though fully set forth herein.

47.     Plaintiff brings this claim individually and on behalf of members of the Class.

48.     GM and Class members are "persons" as defined by Mich. Comp. Laws § 445.902(d).

49.     GM advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws § 445.902(g).

50.     GM engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws § 445.903(1), including:

a.     Representing that its goods and services have characteristics, uses, and benefits that they do not have, in violation of Mich. Comp. Laws § 445.903(1)(c);

b.     Representing that its goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws § 445.903(1)(e);

c.     Making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws § 445.903(1)(bb); and

d.     Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws § 445.903(1)(cc).

51.     GM's representations and omissions were material because they were likely to deceive reasonable consumers.

52.     GM intended to mislead Plaintiff and Class members and induce them to rely on its misrepresentations and omissions.

53.     GM acted intentionally, knowingly, and maliciously to violate Michigan's Consumer Protection Act, and recklessly disregarded Plaintiff and Class members' rights. GM's knowledge of the Defect in the L87 Engines installed in Class Vehicles put it on notice that the Class Vehicles were not as it advertised.

54.     As a direct and proximate result of GM's unfair, unconscionable, and deceptive practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their Class Vehicles.

55.     Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $250, declaratory relief, and any other relief that is just and proper.

**COUNT II**

**Illinois Consumer Fraud and Deceptive Business Practices Act**

**815 ILCS §§ 505, et seq.**

**(on behalf of the Illinois Subclass)**

56.     Plaintiff incorporates by reference and re-alleges all prior paragraphs of this complaint as though fully set forth herein.

57.     Plaintiff brings this claim individually and on behalf of members of the Subclass.

58.     GM is a "person" as defined by 815 ILCS § 505/1(c).

59.     Plaintiff and Subclass members are "consumers" as defined by 815 ILCS § 505/1(e).

60.     GM's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 ILCS § 505/1(f). GM's conduct is described in full detail above.

61.     GM's engaged in unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in violation of 815 ILCS § 505/2.

62.    GM's representations and omissions were material because they were likely to deceive reasonable consumers.

63.    GM intended to mislead Plaintiff and Subclass members and induce them to rely on its misrepresentations and omissions.

64.    The above unfair and deceptive practices and acts by GM were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

65.    GM acted intentionally, knowingly, and maliciously to violate Illinois's Consumer Fraud Act, and recklessly disregarded Plaintiff and Subclass members' rights. GM's knowledge of the Defect in the L87 Engines installed in Class Vehicles put it on notice that the Class Vehicles were not as advertised.

66.    As a direct and proximate result of GM's unfair, unlawful, and deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their Class Vehicles.

67.    Plaintiff and Subclass members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, declaratory relief, and reasonable attorneys' fees and costs.

# COUNT III

## Illinois Uniform Deceptive Trade Practices Act

### 815 ILCS §§ 510/1, et seq.

#### (on behalf of the Illinois Subclass)

68.     Plaintiff incorporates by reference and re-alleges all prior paragraphs of this complaint as though fully set forth herein.

69.     Plaintiff brings this claim individually and on behalf of members of the Subclass.

70.     GM is a "person" as defined by 815 ILCS § 510/1(5).

71.     GM engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS § 510/2(a), including:

a.     Representing that goods or services have characteristics that they do not have;

b.     Representing that goods or services are of a particular standard, quality, or grade if they are of another;

c.     Advertising goods or services with intent not to sell them as advertised; and

d.     Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

72.     GM's representations and omissions were material because they were likely to deceive reasonable consumers.

73.     The above unfair and deceptive practices and acts by GM were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

74.     As a direct and proximate result of GM's unfair, unlawful, and deceptive trade practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their Class Vehicles.

75.     Plaintiff and Subclass members seek all monetary and non-monetary relief allowed by law, including injunctive relief, declaratory relief, and reasonable attorney's fees and costs.

## COUNT IV

### Violation of the Magnuson-Moss Warranty Act

### 15 U.S.C. §§ 2301, et seq.

### (on behalf of the Class)

76.     Plaintiff incorporates by reference and re-alleges all prior paragraphs of this complaint as though fully set forth herein.

77.     Plaintiff brings this claim individually and on behalf of members of the Class.

78.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332(a) and (d).

79.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

80.     GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

81.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

82.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

83.     In its Limited Warranty, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.

84.     GM's Limited Warranty is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

85.     With respect to Class members' purchases or leases of the Class Vehicles, the terms of GM's written warranty and implied warranty became part of

the basis of the bargain between GM, on the one hand, and Plaintiffs and each of the other Class members, on the other.

86.     GM breached these warranties, as described in more detail above, by selling Class Vehicles with the L87 Engine Defect.

87.     GM received notice of the Defect from consumer field complaints and incidents involving the Defect as well as its own internal investigations, testing, quality assurance, and design validation processes.

88.     GM knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted at the time it sold each Class Vehicle, but failed to fix and/or disclose the Defect.

89.     The remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff and the other Class members resort to an informal dispute resolution procedure and/or afford GM a reasonable opportunity to cure its breach of warranties is excused and thus deemed satisfied.

90.     As a direct and proximate result of GM's breaches of its Limited Warranty and the implied warranty of merchantability, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their Class Vehicles.

91.    Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including damages, declaratory relief, reasonable attorney's and costs, and any other relief that is just and proper.

## COUNT V

## Negligent Misrepresentation

## (on behalf of Plaintiff and the Class)

92.    The Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

93.    Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, detailing, distribution, and sale of the Class Vehicles.

94.    Defendant breached this duty by, as discussed above, representing that the Class Vehicles were safe and reliable.

95.    Defendant made this misrepresentation in the course of its business, and to induce consumers to purchase the Class Vehicles, thereby increasing its profits.

96.    At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

97.    At an absolute minimum, Defendant negligently misrepresented material facts about the safety of the features and reliability of the Class Vehicles.

98.    The negligent misrepresentations made by Defendant, upon which Plaintiff and the Class reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and the Class to purchase the Class Vehicles and Plaintiffs and the Class suffered injury as a result thereof.

99.    Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including damages, and recission, and any other relief that is just and proper.

## COUNT VI

### Breach of Contract

**(on behalf of Plaintiff and the Class)**

100.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

101.   Defendant expressly warranted that the Class Vehicles were safe and reliable. Defendant's claims regarding the Class Vehicles constituted an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff and Class Members placed importance on Defendant's claims.

102.   All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class Members.

103.   Defendant breached the terms of the contract, including the express warranties, with Plaintiff and the Class Members, by not providing Class Vehicles that conform to the advertising and marketing claims.

104.   As a result of Defendant's breach of contract, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

105.   Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including compensatory damages, declaratory relief, and any other relief that is just and proper.

## COUNT VII

## Breach of the Implied Warranty of Merchantability

### (on behalf of Plaintiff and the Class)

106.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

107.   Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

108.   Defendant is a merchant with respect to products such as the Class Vehicles at issue.

109.   In order to be merchantable, goods must conform to the promises or affirmations of fact made in the advertising of the product.

110.   Defendant breached the implied warranty of merchantability to Plaintiff and Class Members in its representations that the Class Vehicles were safe and reliable, when those representations were actually false.

111.   As a result of Defendant's misleading conduct, Plaintiff and Class Members did not receive merchantable goods as impliedly warranted by Defendant.

112.   Defendant did not exclude or modify the product's implied warranty of merchantability.

113.   As a proximate result of Defendant's breach of its implied warranty, Plaintiff and Class Members incurred damages.

114.   Plaintiff and Class Members were damaged as a result of Defendant's failure to comply with its obligations under the implied warranty, since Plaintiff and the Class paid for the product, the Class Vehicles, that did not have the promised quality and nature, paid a premium for the Class Vehicles, when they could have instead purchased other less expensive products, and Plaintiff and Class Members lost the opportunity to purchase similar products that provided the capabilities advertised.

115.   As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Class Members have been damaged in an amount to be determined at trial.

116.   Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including damages, incidental and consequential damages, declaratory relief, and any other relief that is just and proper.

## COUNT VIII

## Breach of the Express Warranty

### (on behalf of Plaintiff and the Class)

117.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

118.   Defendant was at all relevant times a merchant involved in the manufacturing, distributing, warranting, and/or selling of the Class Vehicles.

119.   Plaintiff and the Class formed contracts with Defendant at the time they purchased their Class Vehicles. The terms of that contract include that the Class Vehicles would be free from "defects in materials and workmanship," and moreover include Defendant's claims that that the Class Vehicles were safe and reliable. In addition, the terms of the contract include that "[a]ny defects still present at the time the vehicle is delivered to you are covered by the warranty." This product advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class, on the one hand, and Defendant, on the other.

120.   Defendant breached the terms of these contracts, including the express warranties, by failing to provide Class Vehicles that provided the benefits advertised by Defendant—namely, that the Class Vehicles were safe, reliable and free from defects.

121.   Any attempt by Defendant to disclaim or limit its express warranties is unconscionable and unenforceable under the circumstances here. Defendant knew or should have known that the Class Vehicles were not safe and reliable due to the Defect in the L87 Engines; Defendant had unequal bargaining power and misrepresented the reliability, quality, performance, and qualities of the Class Vehicles; and any limited remedies unreasonably favor Defendant and fail Plaintiff's reasonable expectations concerning product performance.

122.   Any purported warranty limitations excluding or limiting (a) labor and costs of labor and (b) incidental and consequential damages, are also procedurally and substantively unconscionable and thus fail under UCC § 2-302 and relevant state law.

123.   Plaintiff and the Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein. Plaintiff and the Class members were not required to notify GM of the breach because it would have been futile.

124.   As a direct and proximate cause of GM's breach, Plaintiff and Class members bought Class Vehicles they otherwise would not have, overpaid for the Class Vehicles, did not receive the benefit of their bargain, and their Class Vehicles' suffered a diminution in value and GM has not offered an adequate remedy.

125.   Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including damages, incidental and consequential damages, declaratory relief, and any other relief that is just and proper.

## COUNT IX

### Unjust Enrichment

### (on behalf of Plaintiff and the Class)

126.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

127.   To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

128.   Plaintiff and Class Members paid Defendant for, as advertised by Defendant, Class Vehicles that were safe and reliable.

129.   In exchange, Defendant provided Plaintiff and Class Members with Class Vehicles that were not safe and reliable and that could not meet Plaintiff's and Class Members' reasonable expectations created by Defendant's marketing, labelling, and other representations.

130.   Defendant knew or should have known that the Class Vehicles were not safe and reliable, could not meet Plaintiff's and Class Members' reasonable expectations created by Defendant's marketing, labelling, and/or other representations.

131.   As such, Plaintiff and Class Members conferred value upon Defendant which would be unjust for Defendant to retain.

132.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and Class Members have suffered and continue to suffer economic and other harms.

133.   Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for its unjust enrichment, as ordered by the Court.

134.   Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including restitution, declaratory relief, and any other relief that is just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment individually, on behalf of himself, and members of the Class, as follows:

A.      For an order certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and Subclass, and Plaintiff's attorneys as Class Counsel;

B.      For an order declaring that Defendant's conduct violates the statutes referenced herein;

C.      For an order finding in favor of Plaintiff, the Class, and/or the Subclass on all counts asserted herein;

D.      For actual, compensatory, incidental, consequential, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For injunctive relief enjoining the illegal acts detailed herein;

F.      For prejudgment interest on all amounts awarded;

G.      For an order of restitution and all other forms of equitable monetary relief;

H.      For an order awarding Plaintiff, the Class, and Subclass their reasonable attorneys' fees and expense and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: October 28, 2025       Respectfully submitted,


By: */s/ David P. Meyer*

**MEYER WILSON WERNING CO., LPA**
David P. Meyer (P80478)
41000 Woodward Ave #350
Bloomfield Hills, MI 48304
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
Email: dmeyer@meyerwilson.com

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (*pro hac vice*
forthcoming)
Matthew B. George (*pro hac vice*
forthcoming)
Blair E. Reed (*pro hac vice* forthcoming)
Walter B. Howe (*pro hac vice* forthcoming)
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
lking@kaplanfox.com
mgeorge@kaplanfox.com
breed@kaplanfox.com
whowe@kaplanfox.com

*Attorneys for Plaintiff*